UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | '08 MJ 1827 |
| ) | |
| Plaintiff, ) | Magistrate Case No._____ |
| ) | |
| v. ) | COMPLAINT FOR VIOLATION OF |
| ) | KNH |
| **Rene PATRICIO-Aguilar,** ) | Title 8, U.S.C., Section |
| ) | 1324(a)(2)(B)(iii)- |
| Defendant. ) | Bringing in Illegal Aliens |
| ) | Without Presentation |
| ) | |
| ) | Title 8, U.S.C., Section 1326 |
| ) | Attempted Entry After Deportation |

The undersigned complainant being duly sworn states:

## Count I

On or about **June 11, 2008,** within the Southern District of California, defendant **Rene PATRICIO-Aguilar,** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Claudia AMIGON-Torres** and **M.A.D.A.,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens, and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

## Count II

On or about **June 11, 2008,** within the Southern District of California, defendant **Rene PATRICIO-Aguilar,** an alien, who previously had been excluded, deported and removed from the United States to **Mexico,** attempted to enter the United States with the purpose; i.e. conscious desire, to enter the United States at the **San Ysidro Port of Entry,** without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Sara Esparagoza, United States Customs
and Border Protection Enforcement Officer

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 12th DAY OF
**JUNE, 2008.**

UNITED STATES MAGISTRATE JUDGE

## PROBABLE CAUSE STATEMENT

The complainant states that **Claudia AMIGON-Torres** and **M.A.D.A.** are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is material; that it is impracticable to secure their attendance at trial by subpoena; and that they are Material Witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On June 11, 2008, at approximately 6:04 AM, **Rene PATRICIO-Aguilar (Defendant)** made application for admission into the United States at the San Ysidro Port of Entry. Defendant was the driver and sole visible occupant of a red 1998 Ford Windstar. Upon inspection before a Customs and Border Protection (CBP) Officer, Defendant gave a negative Customs declaration and presented a Permanent Resident Card (I-551) bearing the name Celedonio Perales De Los Santos. Defendant claimed he had owned the vehicle for about two years and presented a vehicle registration showing the owner as Seledonio Perales. Defendant told the CBP Officer that he lived in Tijuana and San Diego and was on his way to work in San Diego. Upon inspection of the vehicle, the CBP Officer observed that the glove box was empty and the vehicle showed no signs of personal belongings. The CBP Officer also noticed the gas tank had new bolts and seemed to have been recently removed. Defendant and the vehicle were subsequently escorted to secondary for further inspection.

In secondary, a CBP Service Canine was utilized to screen the vehicle which alerted to the underside of the vehicle. CBP Officers in secondary looked under the vehicle and discovered two females inside a non-factory compartment affixed to the undercarriage. CBP Officers had to drive the vehicle to a lift in order to raise the vehicle and remove one minor female and one adult female from the compartment. Both of the concealed persons were determined to be citizens of Mexico without legal documents to enter the United States and are now identified as **Claudia AMIGON-Torres (Material Witness 1)** and **M.A.D.A. (Material Witness 2).**

Also in secondary, Defendant's fingerprints were obtained and queried utilizing the Integrated Automated Fingerprint Identification System (IAFIS) revealing Defendant's true identity and criminal history as a previously removed alien. Immigration service records reflect Defendant is a citizen of Mexico without legal rights to enter into, pass through or remain in the United States. Information contained in the Deportable Alien Control System (DACS) indicates Defendant was ordered deported by an Immigration Judge on or about June 3, 1992. Service records contain no evidence that Defendant has applied for, nor received permission from the Attorney General of the United States, or his designated successor, the Secretary of the Department of Homeland Security to legally re-enter the United States.

During a videotaped interview, Defendant was advised of his Miranda rights. Defendant acknowledged his rights and elected to answer questions without an attorney present. Defendant admitted he has previously been ordered deported from the United States. Defendant claims he made arrangements to be smuggled into the United States for $2,300.00 USD. Defendant claims he was given the I-551 Card and told to memorize the information on it because he was to assume that identity in order to illegally enter the United States. Defendant stated he was to drive the vehicle across the border and drop it off in San Ysidro, California. Defendant stated his final destination was Las Vegas, Nevada. Defendant denied knowledge of the concealed aliens.

On a separate videotaped interview, with Material Witness 1 admitted she and Material Witness 2 are citizens of Mexico without legal documents to enter the United States. Material Witness 1 stated they were traveling to Los Angeles, California to seek residency. Material Witness 1 stated that her husband was going to pay $10,500.00 USD upon their arrival to Los Angeles.